UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------X

ISAAC WRIGHT; THARMOWSCA
MATHELIER and AFFIRMATIVE
ACTION ADVOCATES OF AMERICA,

                 Plaintiff,

      -against-

NEW YORK CITY; NEW YORK CITY
HOUSING AUTHORITY; TINO
HERNANDEZ; STEVEN A. PASICHOW;
NAOMI LARA; MARGARETTE RUIZ;
PHILLIS STEWART; RACHEL ADLER;
JOHN DOES and JANE DOES,

               Defendants.
-------------------------------------------------------X

**REPORT AND
RECOMMENDATION
02 CV 4251 (JFB)(LB)**

FILED
IN CLERKS OFFICE
U.S. DISTRICT COURT ED. N.Y.

★ MAR 3 1 2006 ★

P.M._____
TIME A.M._____

**BLOOM, United States Magistrate Judge:**

       Plaintiff Isaac Wright ("Wright"), proceeding *pro se*, and plaintiffs Tharmowsca Mathelier

("Mathelier") and Affirmative Action Advocates of America ("4A") (together the "4A plaintiffs"),

proceeding with counsel, (collectively "plaintiffs") bring this action pursuant to the Racketeer

Influenced and Corrupt Organization Act ("RICO"), 18 U.S.C. §§ 1961 *et seq*. Plaintiffs allege that

defendants Rachel Adler and Steven Pasichow, while employed by the City of New York (together

"City defendants"), and Tino Hernandez, Naomi Lara, Margarette Ruiz and Phillis Stewart, while

employed by the New York City Housing Authority ("NYCHA") (together "NYCHA defendants"),

committed various acts of racketeering, including mail and wire fraud, and conspired against

plaintiffs in connection with their duties as employees of NYC and NYCHA (collectively

"defendants"). Plaintiffs also claim that defendants have violated numerous federal statutes,

constitutional provisions and various state laws. Plaintiffs seek millions of dollars in damages and

injunctive relief. The NYC defendants and the NYCHA defendants have moved separately to

dismiss plaintiffs' complaints.  The Honorable Nina Gershon, United States District Judge, referred

defendants' motions to dismiss to the undersigned for a Report and Recommendation pursuant to 28

U.S.C. § 636(b).[1]  For the following reasons, it is respectfully recommended that defendants'

motions to dismiss should be granted.

## PROCEDURAL HISTORY

On July 26, 2002 plaintiff Wright, proceeding *pro se*, filed a complaint on behalf of himself

and plaintiffs Mathelier and 4A, a company jointly owned and operated by the individual plaintiffs.

On December 11, 2002, an initial conference was held in this matter[2] and defendants expressed their

intention to file dispositive motions.  The Court afforded plaintiffs an opportunity to amend their

complaint and on March 3, 2003, plaintiffs filed an amended complaint which was signed by

plaintiff Wright *pro se* and by counsel on behalf of the 4A plaintiffs (the "Wright Compl.").  At a

subsequent conference held on March 6, 2003, Mr. Weinstein acknowledged that although plaintiff

Wright had in fact drafted the amended complaint, he had reviewed it and signed it on behalf of

plaintiffs Mathelier and 4A.  The Court advised Mr. Weinstein that he could not file an amended

complaint that was drafted by a *pro se* party and afforded him the opportunity to submit an amended

complaint on behalf of the 4A plaintiffs by April 7, 2003.[3]  Mr. Weinstein submitted an amended

complaint on April 7, 2003 that is virtually identical to the Wright Compl. (the "4A Compl.").  The

only discernible difference in the 4A complaint is that plaintiff Wright's name has been removed

---

[1]This case was subsequently reassigned to the Honorable Joseph F. Bianco.

[2]Despite entering a notice of appearance on behalf of plaintiffs Mathelier and 4A, attorney Mark J. Weinstein did not appear at the conference.

[3]By Order dated March 27, 2003, I granted plaintiff Wright permission to submit a second amended complaint; however, Wright chose not to do so.

and there are  fewer allegations concerning defendants violations of the RICO statute.[4]

All defendants seek dismissal of plaintiffs' amended complaints: (1) pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure on the grounds that plaintiffs' complaints fail to state a claim upon which relief can be granted and (2) pursuant to Fed. R. Civ. P 9(b) for failure to plead fraud with sufficient particularity.[5]  For the reasons set forth below, it is respectfully recommended that defendants' motions to dismiss should be granted.

## BACKGROUND

For the purposes of this motion, the facts alleged in both amended complaints are assumed to be true.  In April of 2002, plaintiffs Wright and Mathelier formed the consulting firm 4A for the purpose of providing technical and professional services to companies that contract with defendant NYCHA pursuant to NYCHA's government procurement program. Wright Compl. ¶¶ 26, 29.  The allegations in plaintiffs' complaints stem from their attempts to enter into contracts with various contractors and subcontractors of defendant NYCHA in connection with Section 3 of the Housing and Urban Redevelopment Act of 1968.  Section 3, as amended, provides that, "the Secretary of [HUD] shall require that public . . . housing agencies ['PHAs' such as NYCHA], and their contractors and subcontractors make their best efforts to give low-income and very-low income

---

[4]As both complaints contain essentially identical allegations, although paragraph numbering may be different because the 4A complaint contains fewer RICO allegations, the Court will cite to the Wright Complaint for ease of reference.

[5]Defendants also move to dismiss the complaints pursuant to Rule 8 of the Fed. R. Civ. P. contending that both amended complaints fail to comply with Rule 8 in that they do not contain "a short and plain statement of the claim showing that the pleader is entitled to relief," as required by Rule 8(a); the NYCHA defendants further assert that each averment in the complaints is not "simple, concise and direct" as required by Rule 8(e)(1). Although, the Court agrees that plaintiffs' amended complaints do not meet the short and plain statement standard, under Swierkiewicz v. Sorema N.A., 534 U.S. 506 (2002), it is possible to make out the meaning of plaintiffs' allegations and therefore, dismissal pursuant to Rule 8 is not recommended.

persons the training and employment opportunities generated by" certain HUD funding. See 12 U.S.C. 1701u(c)(1)(A). The statute further provides that these efforts "shall be directed in the following order of priority: (i) residents of the housing developments for which the assistance is expended, (ii) residents of other housing developments managed by the PHA, (iii) participants in Youthbuild programs, and (iv) other low - and very low- income persons residing in the metropolitan area." Id. at (c)(1)(B)(i). The implementing regulations issued by HUD directs recipients of Section 3 funding, as well as their contractors and sub-contractors, to award Section 3 covered contracts to the "greatest extent feasible" to Section 3 business concerns which includes business concerns that are at a minimum 51 percent owned by Section 3 residents. 24 C.F.R. §135.36.

The implementing regulations further direct recipients of HUD funds covered by Section 3 to submit annual reports to HUD to review the effectiveness of the program. See 24 C.F.R. §135.90. These reports are required to be made available to the public. Id. The regulations also provide administrative procedures for compliance review, see 24 C.F.R. §135.74; as well as a process for filing complaints regarding alleged Section 3 violations. See 24 C.F.R. §135.76. A party alleging she has been aggrieved as a result of a Section 3 violation may file a complaint with the Assistant Secretary of Housing and Urban Development within 180 days of the alleged violation. HUD investigates the complaint and if it finds that a complainant has not alleged a valid claim of noncompliance with Section 3, HUD may dismiss the complaint. 24 C.F.R. § 135.76(f)(1). The complainant then has the right to appeal within 15 days of receipt of the decision. 24 C.F.R. § 135.76(f)(3).

Plaintiffs Wright and Mathelier, though not residents of NYCHA housing, state that they are "very low-income" persons who reside in the New York metropolitan area. Wright Compl. ¶¶ 34,

4

35.    Plaintiffs thus assert that they are Section 3 residents and accordingly, 4A  should be

considered a Section 3 business pursuant to HUD's regulations.  Id. ¶ 37. Through the creation of

4A, plaintiffs intended to provide consulting services to companies that had contracts with NYCHA

to assist them with their Section 3 compliance.  Plaintiffs allege that as 4A is a Section 3 business,

any money paid to 4A by contractors of NYCHA would be credited toward satisfying the

contractors' Section 3 requirements.  Id. ¶ 40.  Thus plaintiffs maintain that not only would they

provide contractors with assistance in hiring and monitoring qualified Section 3 workers, the

contractors would also be eligible to receive Section 3 credit for payments to plaintiffs. Id.

        Plaintiffs state that they had entered into verbal agreements with a number of contractors

who had been awarded contracts from NYCHA  to perform construction work on various buildings

operated by NYCHA. Id. ¶ 42.  Plaintiffs estimate the value of these verbal agreements to be about

$250,000.  Id.  Plaintiffs maintain that while still negotiating with a number of NYCHA contractors,

they had already begun to provide their services to Green Gold Development Corporation ("Green

Gold"), a company that NYCHA had contracted with to perform grounds improvement work at

Rangel Houses.  Id. ¶ 45.  Green Gold paid plaintiffs a deposit of $7,500 and placed plaintiff

Mathlelier on their payroll for a weekly salary of $660. Id.   Plaintiffs further allege that they would

have earned a total of $60,000 over a six month period under the contract that they were finalizing

with Green Gold.  Id. ¶ 44.

        Plaintiff Wright alleges that a few weeks after plaintiff Mathelier commenced working under

the contract with Green Gold, defendant Stewart informed Green Gold that as plaintiff Mathelier

was not a NYCHA resident and 4A was not a Section 3 business, any payments made to plaintiffs

would not count towards Green Gold's Section 3 requirements.  Id. ¶ 47.  Plaintiffs assert that as a

result, Green Gold terminated its contract with plaintiff.  Id. ¶ 49.  Plaintiff Wright alleges that he

5

spoke to two unnamed employees of NYCHA attempting to resolve the issue of plaintiffs' Section 3 status with no success. Id. ¶¶ 50-51. Plaintiffs further allege that Wright had a conversation with defendant Ruiz and sent a letter to defendant Lara requesting that NYCHA reverse its decision to deny plaintiffs Section 3 status; plaintiffs allege this request was denied. Id. ¶¶ 52-53. Plaintiff Wright states that he had several conversations with defendant Adler and also met with her, and that defendant Adler was aware of plaintiffs' complaints prior to meeting with Wright and was actually investigating plaintiffs. Id. ¶¶ 54-56.

Finally, plaintiff Wright alleges that he had several conversations with defendant Tinero regarding plaintiffs' Section 3 status. Id. ¶ 59. Defendant Tinero referred plaintiff Wright to NYCHA's revised guidelines for Section 3 compliance which required contractors to only hire workers who reside in NYCHA housing, to the exclusion of other Section 3 residents, in contracts that are valued at over $500,000.[6] Id. ¶¶ 60-62. Plaintiffs assert that as a result of their complaints, defendants investigated them in an attempt to destroy their company and to intimidate contractors from doing business with them. Id. ¶¶ 58, 64. Plaintiffs assert that defendants' actions succeeded in destroying plaintiffs' company. Id.

**Plaintiffs' Rico Statement**

Plaintiffs' complaints each contain a separate RICO statement which asserts that all defendants, including unnamed defendants, have violated every substantive provision of the RICO statute and contains no fewer than 45 alleged violations of the statute. Plaintiffs allege the existence

---

[6]In NYCHA defendants' Memorandum of Law in Support of their Motion to Dismiss, NYHCA describes its Section 3 preference with respect to NYCHA residents as follows: "NYCHA has supplemented Section 3 with its Resident Employment Program (REP) requirement, which mandates that on contracts valued at over $5000,000 at least 15% of the total labor costs (including fringe benefits) be expended on employment of NYCHA residents." Memorandum of Law of NYCHA defendants in Support of Their Motion to Dismiss at 2.

of an enterprise by stating that the individual defendants, and other unknown persons and entities, were members of the "Selective Exclusion and Minimization Enterprise" or the "SEM Enterprise," a name plaintiffs created to describe defendants' conduct for the purpose of this litigation. Plaintiffs allege that defendants have furthered the goals of the SEM enterprise by committing numerous acts of racketeering in violation of Section 1962 including: mail and wire fraud, Wright Am. Compl. ¶¶ 69-102, 103-136; money laundering, Id. ¶ 137; monetary transactions in unlawfully derived property, Id. ¶ 138; interstate travel in aid of racketeering, Id. ¶ 139; obstruction of justice, Id. ¶¶ 142-145; and witness tampering Id. ¶¶ 146-149.

All of these actions were allegedly taken by defendants in furtherance of the goals of the SEM enterprise which plaintiffs allege are, among other things, to enrich, preserve and enhance the participation of the "Majority Class and Upper Class" in NYCHA's government procurement programs while at the same time controlling and excluding "Minority Class (specifically African Americans & Hispanic Americans) and Low-Income Class" participation in these same government procurement programs. Id. ¶ 26. Plaintiffs further allege that defendants carry out the goals of the SEM enterprise through various means including an ongoing scheme to defraud HUD, and as a result injure plaintiffs and other Section 3 residents who are not members of "the majority and upper-income class."

Plaintiffs allege that defendants have allowed contractors who are subject to Section 3 requirements, to submit fraudulent information with respect to their Section 3 compliance. Id. ¶ 27. Plaintiffs assert that contractors routinely, and at times with the assistance of defendants, misleadingly report that they have hired Section 3 residents when they have not, or that contractors hire Section 3 residents at the inception of the contract, but then fire them shortly thereafter. Id. Plaintiffs allege that these actions are taken to make it appear that defendants and their contractors

7

are in compliance with their Section 3 requirements pursuant to HUD regulations. Id. Plaintiffs allege that defendants are aware that the information they receive from contractors is false and further assert that defendants rely on these deceptive acts and reports to submit their own fraudulent compliance reports to HUD on a yearly basis. Id. ¶ 29. It is these fraudulent compliance reports, and the subsequent funding that defendant NYCHA receives from HUD as a result of these reports, that underlie plaintiffs' allegations that defendants have committed mail and wire fraud. Specifically, plaintiffs allege that defendants committed the predicate acts of mail and wire fraud in furtherance of their scheme by providing false and misleading compliance reports to HUD. Id.

Plaintiffs also allege that defendants have committed the predicate acts of obstruction of justice, witness tampering and money laundering in furtherance of the SEM enterprise. Id. ¶¶ 137, 142-149. Plaintiffs' allegations of money laundering are raised in connection with defendants' alleged receipt of funds from HUD based on the fraudulent compliance reports. The acts of obstruction of justice and witness tampering alleged are tied to plaintiffs' allegations that defendants wrongfully denied plaintiffs their Section 3 status and investigated plaintiffs after plaintiffs complained about being denied Section 3 status.

## DISCUSSION

### Standard of Review

A court should only dismiss a complaint pursuant to Rule 12(b)(6) if it appears beyond doubt that the plaintiff can prove no set of facts in support of the complaint that would entitle the plaintiff to relief. See, e.g., Strougo v. Bassini, 282 F.3d 162, 167 (2d Cir. 2002); King v. Simpson, 189 F.3d 284, 286-87 (2d Cir. 1999). The Court must accept all factual allegations in the complaint as true and draw all reasonable inferences in favor of the plaintiff. See, e.g., Koppel v. 4987 Corp., 167 F.3d 125, 130 (2d Cir. 1999); Jaghory v. New York State Dep't of Educ., 131 F.3d 326, 329 (2d

Cir. 1997). The issue is not whether a plaintiff will ultimately prevail but whether the plaintiff is entitled to offer evidence to support his or her claims. See, e.g., Villager Pond, Inc. v. Town of Darien, 56 F.3d 375, 378 (2d Cir. 1995), cert. denied, 519 U.S. 808 (1996). The Court must "confine its consideration 'to facts stated on the face of the complaint, in documents appended to the complaint or incorporated in the complaint by reference, and to matters of which judicial notice may be taken.'" Leonard F. v. Israel Disc. Bank of New York, 199 F.3d 99, 107 (2d Cir. 1999) (quoting Allen v. WestPoint-Pepperell, Inc., 945 F .2d 40, 44 (2d Cir. 1991)); Hayden v. County of Nassau, 180 F.3d 42, 54 (2d Cir. 1999).

In addition, as plaintiffs' complaints allege fraud, the allegations must meet the requirements of Rule 9(b) which states in relevant part that "[i]n all averments of fraud or mistake, the circumstances constituting fraud or mistake shall be stated with particularity." Fed. R. Civ. P. 9(b). In order to meet this burden, the complaint must: "'(1) specify the statements that plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent.'" Shields v. Citytrust Bancorp, Inc., 25 F.3d 1124, 1128 (2d Cir. 1994) (quoting Mills v. Polar Molecular Corp., 12 F.3d 1170, 1175 (2d Cir. 1993)). Morever, where there are multiple defendants, Rule 9(b) requires that plaintiff allege facts specifying each defendant's contribution to the fraud. See DiVittorio v. Equidyne Extractive Indus., Inc., 822 F.2d 1242, 1247 (2d Cir. 1987).

The Court liberally construes a *pro se* litigant's submissions. See Haines v. Kerner, 404 U.S. 519, 520 (1972) (allegations of a *pro se* complainant are held "to less stringent standards than formal pleadings drafted by lawyers"); Simmons II v. Abruzzo, 49 F.3d 83, 87 (2d Cir. 1995) (the complaints of *pro se* litigants are read liberally to be construed in their favor). "A *pro se* litigant should be afforded every reasonable opportunity to demonstrate that he [or she] has a valid claim."

Bobal v. Rensselaer Polytechnic Institute, 916 F.2d 759, 762 (2d Cir. 1990) (citing Satchell v. Dilworth, 745 F.2d 781, 785 (2d Cir. 1984)) (brackets in original). Thus an action brought *pro se* generally "should not be dismissed for failure to state a claim unless it appears beyond a doubt that the plaintiff can prove no set of facts in support of his claim which will entitle him to relief." Hughes v. Rowe, 449 U.S. 510 (1980). However, "pro se status does not exempt a party from compliance with relevant rules of procedural and substantive law." Iwachiw v. N.Y.C. Bd. of Ed., 194 F.Supp 2d 194, 202 (E.D.N.Y. 2002). The Court notes that while plaintiff Wright's pleading was submitted *pro se,* the complaint submitted on behalf of plaintiffs Mathelier and 4A is not entitled to the same liberal construction.[7]

## RICO Claims

Section 1962 of the RICO statute makes it unlawful for a person to: (a) invest the proceeds derived from a pattern of racketeering in an enterprise; (b) maintain an interest in or control an enterprise through a pattern of racketeering activity; (c) conduct an enterprise's affairs through a pattern of racketeering activity; or (d) conspire to violate (a), (b), or (c). 18 U.S.C. 1962 *et seq.* Plaintiffs allege that defendants have violated all four subsections of §1962.

Section 1964 (c) of the RICO statute states, in relevant part, that "any person injured in his business or property by reason of a violation of Section 1962 [of the RICO statute] may sue therefor in any appropriate United States district court and shall recover threefold the damages he sustains and the cost of the suit . . ." 18 U.S.C. §1964(c). A plaintiff suing under this statute must set forth allegations that establish a defendant has violated 18 U.S.C. §1962 and show that the alleged injury

---

[7]Even if the Court liberally construed the 4A complaint, it still would fail to state a claim upon which relief can be granted.

to plaintiff occurred as a result of that violation.  Burdick v. American Express Co., 865 F.2d 527, 529 (2d Cir. 1989).

In order to establish that a defendant has violated §1962, a plaintiff must allege seven constituent elements:  (1) that the defendant (2) through the commission of two or more acts (3) constituting a "pattern" (4) of "racketeering activity" (5) directly or indirectly invests in, maintains an interest in, or participates in (6) an "enterprise" (7) the activities of which affect interstate or foreign commerce.  See Moss v. Morgan Stanley Inc., 719 F.2d 5, 17 (2d Cir. 1983).  In addition, a plaintiff must show that they were injured in their business or property, and that these injuries were proximately caused by the conduct constituting the alleged pattern of racketeering activity.  See Holmes v. Securities Investor Protection Corp. 503 U.S. 258, 268 (1992); Hecht v. Commerce Clearing House, 897 F.2d 21 (2d Cir. 1990).

Plaintiffs' complaints fail to allege any facts that satisfy the elements of a RICO claim. Moreover, plaintiffs' complaints do not support plaintiffs' allegation that they have been injured as a result of defendants' alleged violation of the RICO statute.  As an initial matter, plaintiffs must establish that defendants have violated Section 1962 by showing, among other things, "a pattern of racketeering activity." Pinnacle Consultants, Ltd. v. Leucadia Natl Corp., 101 F.3d 900, 903-04 (2d Cir. 1996). "Racketeering activity includes the commission of specified state-law crimes, conduct indictable under various provisions within Title 18 of the United States Code, including mail and wire fraud, and certain other federal offenses." Id.  The Court finds that plaintiffs' allegations fail to state a claim that defendants committed the predicate RICO acts, engaged in a pattern of racketeering activity, or have conspired to do so.

11

**Allegations of Mail and Wire Fraud**

Plaintiffs allege that defendants have committed mail fraud, in violation of 18 U.S.C. §

1341, and wire fraud, in violation of 18 U.S.C. § 1343, in furtherance of the goals of the SEM

enterprise. Plaintiffs allege that by providing false and misleading compliance reports to HUD and

obtaining money based upon the fraudulent representations made in these reports, defendants have

violated the mail and wire fraud statutes. The Wright amended complaint alleges that over 23 acts

of mail and wire fraud were committed by unknown defendants beginning in 1970 and alleges that

these same acts were repeated every year thereafter until 2003. Wright's complaint refers to the

individually named defendants in his allegations of mail and wire fraud beginning in 1995 and

continuing until 2003. The 4A complaint contains the identical allegations regarding the mail and

wire fraud violations, however, the allegations in this complaint begin in 1990 and continue until

2003. Specifically, with regard to each allegation of mail fraud, plaintiffs state that:

> [i]n or about and between January [1970] and December [1970], both dates
> being approximate and inclusive, [defendants] JANE DOE(s), JOHN
> DOE(s), UNKNOWN PERSON(s), UNKNOWN ENTITIES, together with
> others, did knowingly and intentionally devise a scheme to defraud HUD or
> obtain money or property from HUD by means of false or fraudulent
> pretenses and representations by placing in the post office or authorized
> depository for mail matter, and by depositing or causing to be deposited, the
> fraudulently prepared annual HUD compliance report and other supporting
> documents to be sent or delivered by the Postal Service and by a private or
> commercial interstate carrier to the HUD offices in Washington, D.C. in
> violation of 18 U.S.C. § 1341.

Plaintiffs recite this same paragraph for each alleged act of mail fraud, merely changing the year the

alleged act occurred. Beginning in the year 1990 and from 1995 through 2003, plaintiffs add the

name of individual defendants to the recited paragraph. Plaintiffs' allegations of wire fraud state

that:

[i]n or about between January [1970] and December [1970], both
dates being approximate and inclusive [defendants], JANE DOE(s),
JOHN DOES(s), UNKNOWN PERSON(s),UNKNOWN ENTITIES
together with others, did knowingly and intentionally devise a scheme
to defraud HUD or obtain money or property from HUD by means of
false or fraudulent pretenses and representations by transmitting or
causing to be transmitted by wire (internet, telegram and telephone), the fraudulently
prepared annual HUD compliance report and other
supporting documents or any part thereof, to be sent or delivered by and
between each other and to the HUD offices in Washington, D.C. in
violation of 18 U.S.C. § 1343.

Plaintiffs' allegations of mail and wire fraud are wholly conclusory. Plaintiffs merely track the

language of the statute, but fail to state with particularity the essential elements necessary to

establish mail fraud under 18 U.S.C. 1341 or wire fraud under 18 U.S.C. 1343. Other than plaintiffs'

conclusory statements and repeated use of the statutory phrase, there are few, if any, factual

allegations connecting any of the defendants to the acts of mail and wire fraud. Plaintiffs have

failed to state a claim of fraud having failed to detail the underlying facts and circumstances

constituting the alleged fraud. "[C]onclusory allegations that defendant's conduct was fraudulent or

deceptive are not enough." Decker v. Massey-Ferguson Ltd., 681 F.2d 111,114 (2d Cir. 1982).

As previously noted, in complaints alleging fraud, the plaintiff must identify which

defendant caused each allegedly fraudulent statement to be spoken, written, wired or mailed, and to

whom the communication was made; when the communication was made; and how it advanced the

fraudulent scheme. McLaughlin v. Anderson, 962 F.2d 187,191 (2d Cir. 1992). Plaintiffs set forth

no facts surrounding the alleged fraudulent mailings or wire transfers other than to state that

"defendants" sent compliance reports on a yearly basis to HUD and received funding from HUD in

connection with these fraudulent reports. That is, plaintiffs fail to allege a single specific mailing or

13

wire transfer by any defendant.  Most fatal to plaintiffs' allegations of fraud, however, is the complete failure to state what role any of the defendants actually played in the fraudulent conduct.  Plaintiffs allege that all of defendants, including unnamed and unknown defendants, were involved in mail and wire fraud between the years 1970 and 2003 when fraudulent compliance reports were sent to HUD through the mail and HUD funds were received by defendant NYCHA.  These conclusory allegations of fraud lack any factual support.  Plaintiffs  fail to establish that any of the defendants actually participated in mail and/or wire fraud.  Even when liberally construed and granting all favorable inferences to plaintiffs, plaintiffs' complaints fail to plead fraud with specificity as required by Federal Rule of Civil Procedure  Rule 9(b).

Plaintiffs' Memorandum of Law In Response to Defendants' Motion to Dismiss ("Plaintiffs' Memo of Law") concedes that they have failed to allege certain elements of the predicate acts with the particularity required by Rule 9(b).  Plaintiffs' Memo of Law at 23-24.  Plaintiffs state they have failed to allege when the mail and wire fraud acts were committed.  Plaintiffs ask the Court to excuse these failures as they posit that the specific information required to plead  these allegations are within the defendants' control and could be obtained through discovery.  Id.  Plaintiffs cite Shapiro v. UJB Financial Corp., 964 F.2d 272, 285 (3rd Cir.) *cert. denied*, 506 U.S. 934 (1992) in support of their request that the Court relax the heightened pleading requirements of Rule 9(b).  Plaintiffs completely underestimate the deficiencies in their complaints.  While plaintiffs have indeed alleged that false compliance reports containing inaccurate Section 3 information were submitted to HUD to fraudulently obtain funding, plaintiffs allege no further facts in support of these general allegations.  Plaintiffs do not allege what role any of the defendants specifically played in creating these reports, who mailed the reports, and other than plaintiffs' assertion that the reports

14

contain false information, provide no further facts to support their allegation that the reports are fraudulent.

In addition, plaintiffs' reliance on <u>Shapiro v. UJB Financial Corp.</u> is misplaced as the court in that case dismissed the plaintiffs' claims noting that plaintiffs had failed to plead that the information they required was in the exclusive control of defendants.  The court in <u>Shapiro</u> stated that "[t]o avoid dismissal in these circumstances, a complaint must delineate at least the nature and scope of plaintiffs' effort to obtain, before filing the complaint, the information needed to plead with particularity. This requirement is intended to ensure that plaintiffs thoroughly investigate all possible sources of information, including but not limited to all publicly available relevant information, before filing a complaint." <u>Shapiro v. UJB Financial Corp.</u> at 285.

Plaintiffs have not established "the nature and scope of their efforts to obtain the information needed to support their claims prior to instituting this litigation." <u>See</u> 24 C.F.R. §135.90 ("All reports submitted to HUD in accordance with the requirements of this part will be made available to the public").  Plaintiffs were offered the opportunity to amend their pleading and were given fair warning by this Court that the allegations in their complaint were deficient.  Finally, although the court may apply a relaxed pleading standard under Rule 9(b) when appropriate, the "rule is relaxed as to matters peculiarly within the adverse parties' knowledge, the allegations must then be accompanied by a statement of the facts upon which the belief is founded." <u>Segal v. Gordon</u> 467 F.2d 602,608 (2d. Cir. 1972). <u>See also</u> <u>U.S. ex. re. Smith v. Yale University</u>, No. 00-Civ-1359 (PCD) — F.Supp.2d — , 2006 WL 397952 * 20 (D.Conn. February 14, 2006) ("merely inserting statutory phrases into the complaint will not satisfy the Rule 9(b)requirements, [as] a complaint cannot escape the charge that it is entirely conclusory in nature merely by quoting such words from

the statutes as 'artifices, schemes, and devices to defraud' and 'scheme and conspiracy.'").

Plaintiffs' complaints are entirely conclusory. Accordingly, defendants' motions to dismiss should be granted as plaintiffs have failed to state a claim that defendants' have committed the predicate acts of mail and wire fraud.

**Other Allegations of Racketeering Activity**

Plaintiffs' allegations that defendants have also committed the predicate acts of money laundering in violation of 18 U.S.C. § 1956, monetary transactions in unlawfully derived property in violation of 18 U.S.C. § 1957, and interstate travel in aid of racketeering in violation of 19 U.S.C. § 1952, all similarly fail as these allegations are premised on defendants alleged acts of mail and wire fraud. Although plaintiffs point to a specific project in Queens, New York in their allegations of money laundering and monetary transactions in unlawfully derived property, this added detail does not make out plaintiffs' fraud claim.

Plaintiffs also allege that defendants have committed the predicate acts of obstruction of justice in violation of 18 U.S.C. § 1503 and witness tampering in violation of 18 U.S.C. § 1512. These allegations are completely baseless. Section 1503 involves the influencing or injuring of a federal officer or juror and Section 1512 involves tampering with a witness in an official proceeding. Plaintiffs' allegations instead concern defendants' actions in connection with plaintiffs' complaints to NYCHA about defendants' refusal to grant plaintiffs Section 3 status. Having failed to establish that defendants have committed any predicate acts of racketeering, plaintiffs' complaints should be dismissed.[8]

---

[8]As plaintiffs have not established that defendants have engaged in a pattern of racketeering activity for any purpose, the Court need not separately address subsections (a),(b) or (c) of 18 U.S.C. §1962, as plaintiffs have failed to state a claim upon which relief can be granted

Morever, a plaintiff alleging a RICO violation must also demonstrate that they have been injured as a result of defendants' conduct in violation of the statute. See Baisch v. Gallina, 346 F3d 366,372 (2d Cir. 2003), Lerner v. Fleet Bank, 318 F.3d 113,122-123 (2d cir. 2003). It is clear that plaintiffs cannot show that their alleged injury, namely losing their contract with Green Gold and not being granted Section 3 status, was directly caused by defendants' alleged violations of the RICO statute. As explained by the Supreme Court recently, a plaintiff must allege that defendants' conduct was the proximate cause of plaintiffs' injury. Plaintiffs allege defendants have submitted fraudulent compliance reports to HUD and received funding as a result of the fraudulent reports in violation of the statute. However, these actions are not what plaintiffs allege caused them harm. Much like the plaintiffs in Lerner, plaintiffs allegations show at most that someone else, namely HUD, may have been injured by defendants' conduct. Defendants' conduct in allegedly submitting fraudulent compliance reports to HUD was not the proximate cause of plaintiffs' loss of their contract with Green Gold or their other potential business opportunities with NYCHA contractors.

## Section 1962 Conspiracy

Section 1962(d) prohibits any person from conspiring to violate any of the substantive provisions of Section 1962(a)-(c). In order to state a claim under Section 1962(d) for conspiracy, the plaintiffs must allege facts from which it can be inferred that there was an agreement involving each of the defendants to commit at least two predicate acts. Hecht v. Commerce Clearing House, Inc.,897 F.2d 21, 25 (2d Cir. 1990). Plaintiffs allegations do not detail any conversation between any specific parties, nor do plaintiffs allege facts to demonstrate that the parties agreed to conspire to violate Section 1962. Thus plaintiffs conspiracy claim should be dismissed.

---

under any and all of these subsections.

**Civil Rights Claims**

**Section 1981**

42 U.S.C. Section 1981 provides:

> All persons within the jurisdiction of the United States shall have the same right in every State and Territory to make and enforce contracts, to sue, be parties, give evidence, and to the full and equal benefit of all laws and proceedings for the security of persons and property as is enjoyed by white citizens, and shall be subject to like punishment, pains, penalties, taxes, licenses, and exactions of every kind, and to no other.

"The elements of a properly pleaded Section 1981 claim are as follows: (1) the plaintiff is a member of a racial minority; (2) the defendant intended to discriminate on the basis of race; and (3) the discrimination concerned one or more of the activities enumerated in the statute." Campbell v. Grayline Airshuttle, 930 F.Supp 794, 802 (E.D.N.Y. 1996) (citations omitted). "To sustain a motion to dismiss, plaintiff's must assert 'that the defendant[s'] acts were purposefully discriminatory . . . and racially motivated." Oblio v. City University of New York et al., Civ. No. 01-5118 (DGT), 2003 WL 1809471 at *11 (April 7, 2003 E.D.N.Y.), quoting Albert v. Carovano, 851 F.2d 561, 571-72 (2d Cir. 1988).

Plaintiffs' complaints fail to allege that they were denied their Section 3 status, or denied their right to enter into contracts, based upon their race. Although plaintiffs attempt to couch defendants' motivation as race based by alleging that all of defendants' actions were taken to benefit the "majority-class" over the "minority- class," including interfering with plaintiffs attempt to enter into contracts and to be recognized as Section 3 residents, these conclusory allegations are insufficient to establish racial animus. "Plaintiffs cannot defeat a Rule 12(b)(6) motion with 'naked assertions' of discrimination; instead the plaintiff must specifically allege . . . the circumstances giving rise to a plausible inference of racially discriminatory intent'" Id. Plaintiffs have failed to do

18

so here.

Morever, plaintiffs' own complaints contain a legitimate nondiscriminatory reason for defendants' actions, namely that plaintiffs were not residents of NYCHA housing and thus under NYCHA's regulations, were not entitled to Section 3 status. Accordingly, plaintiffs' complaints fail to state a claim under §1981.

**Section 1983 Claim**

As to plaintiffs remaining claims under 42 U.S.C. §1983, alleging the denial of Due Process, Equal Protection and a violation of their First Amendment rights, plaintiffs' complaints fail to state a claim upon which relief can be granted. A complaint under 42 U.S.C. §1983 must allege two essential elements. First, "the conduct complained of must have been committed by a person acting under color of state law." Pitchell v. Callan, 13 F.3d 545, 547 (2d Cir. 1994)(citing Parratt v. Taylor, 451 U.S. 527, 535 (1981), overruled on other grounds, by Daniel v. Williams, 474 U.S. 327 (1986)). Second, "the conduct complained of must have deprived a person of rights, privileges or immunities secured by the Constitution or laws of the United States." Id. "Section 1983 itself creates no substantive rights, [but] ... only a procedure for redress for the deprivation of rights established elsewhere." Sykes v. James, 13 F.3d 515, 519 (2d Cir. 1993), cert. denied, 512 U.S. 1240 (1994).

Plaintiffs' allege that they were discriminated against by defendants in violation of the Equal Protection clause of the Fourteenth Amendment to the United Constitution. However, the Court can give short shrift to plaintiffs' Equal Protection claims as the Court has previously noted that plaintiffs have utterly failed to "specifically allege . . . the circumstances giving rise to a plausible inference of racially motivated discriminatory intent." Oblio, 2003 WL 1809471 at *11. The Equal Protection Clause requires that the government treat all similarly situated people alike." Harlen

19

Assocs. v. Incorporated Village of Mineola, 273 F.3d 494, 499 (2d Cir. 2001)(citing City of Cleburne v. Cleburne Living Ctr., 473 U.S. 432, 439 (1985)).   However, plaintiffs' own complaints belie their Equal Protection argument by advancing a rational, non-discriminatory basis for defendants' denial of plaintiffs' Section 3 status: because plaintiffs were not residents of NYCHA. Plaintiffs' allegations of unequal treatment are based on their being denied Section 3 status, however, defendants maintain that plaintiffs do not qualify for Section 3 status because they do not reside in NYCHA housing.  Defendants' actions does not implicate a suspect classification or fundamental right.  The Court therefore applies a rational basis review to the state action which is alleged to be discriminatory.  Heller v. Doe, 509 U.S. 312 (1993).  NYCHA's policy awarding preference for Section 3 status to its residents over non-residents is rational, and therefore plaintiffs' complaints alleging Equal Protection violations under 42 U.S.C. §1983 should be dismissed for failure to state a claim upon which relief can be granted.

Plaintiffs' Due Process claim is based on the premise that they have a property interest in Section 3 status.  Plaintiffs acknowledge that they are not seeking to have the Court enforce any rights under Section 1983 with respect to their contract with Green Gold or other potential contracts. Plaintiffs' Memo of Law at 30.  Instead, plaintiffs' 1983 Due Process claim is premised on their belief that they were legally entitled to Section 3 status and defendants denial of Section 3 status violates their right to Due Process.  Courts have permitted individuals to assert a private cause of action under Section 3.  See, e.g., Stanley Price v. Housing Authority of New Orleans, Civ. No. 01-3016 2003 (SRD) 2002 WL 31308421 (E.D. La. October 11, 2002); Mislap v. U.S. Dep't of HUD, Civ. No. 4-89-635 (DEM), 1990 WL 157516 (E.D. La. October 18, 1990).  However, since 2002, the Supreme Court has limited the circumstances in which a law impliedly creates a private right of

action for private litigants to challenge its violations pursuant to §1983.  Private litigants may not enforce a statute's provisions unless Congress creates a private rights of action in the text of the statute that "unmistakenly focuses on the benefitted class." Gonzaga University v. Doe, 536 U.S. 273, 283 (2002).  Thus plaintiffs' due process claim must fail as it is based on Section 3 of the HUD regulations which does not provide a private right of action.  Moreover, even were the Court to assume that a private right of action exists under Section 3 which was enforceable under Section 1983, plaintiffs failed to avail themselves of the process afforded by Article 78 of the New York Civil Practice Law and Rules in state court or through the administrative complaint procedure provided by the HUD regulations. See Hellenic American Neighborhood Action Committee v. City of New York et al., 101 F.3d 877, 882 (2d. Cir. 1986) (holding Article 78 is an adequate post deprivation procedure under the Due Process clause).  Accordingly, plaintiffs Due Process claim should be dismissed for failure to state a claim upon which relief can be granted.

Finally, plaintiffs' claims that defendants have retaliated against plaintiffs in violation of the First Amendment must similarly fail, as plaintiffs have failed to allege that defendants' actions were "motivated by or substantially caused by [plaintiffs'] exercise of free speech." Eastan v. Sundram, 947 F.2d 1011, 1015 (2d Cir. 1991), Gagliardi v. Village of Pawling, 18 F.3d 188, 194 (2d Cir. 1994).

**Section 1985 Conspiracy Claim**

42 U.S. C. Section 1985 (3)[9] provides, in pertinent part:

---

[9]Although plaintiffs' allege in their papers in opposition that their complaints allege that defendants have also violated subsection (2) of Section 1985, this subsection does not apply to plaintiffs' claim as subsection 2 concerns "obstructing justice; intimidating a party or witness, or juror" in connection with an ongoing proceeding.  Plaintiffs complaints contain no such allegations.

> If two or more persons in any State or Territory conspire ... for the purpose of
> depriving . . . any person or class of persons of the equal protection of the laws, or of
> equal privileges and immunities under the laws .. [and] do, or cause to be done, any
> act in furtherance of the object of such conspiracy, whereby another is injured in his
> person or property, or deprived of having and exercising any right or privilege of a
> citizen of the United States, the party so injured . . . may have an action for the
> recovery of damages occasioned by such injury or deprivation . . .

Section 1985(3) "provides no substantive rights itself but merely 'provides a remedy for violation of

the rights it designates.'" Spencer v. Casavilla, 903 F.2d 171, 174 (2d Cir. 1990)(quoting Great

American Fed. Loan Ass'n v. Novotny, 442 U.S. 366, 372 (1979)).   The four elements of a

§1985(3) claims are: 1) a conspiracy; 2) for the purpose of depriving, either directly or indirectly,

any person or class of persons of equal protection of the laws, or of the equal privileges and

immunities under the laws; 3) an act in furtherance of the conspiracy; 4) whereby a person is either

injured in his person or property or deprived of any right of a citizen of the United States.   United

Bd. of Carpenters, Local 610 v. Scott, 463 U.S. 825, 828-29 (1983).   Furthermore, the conspiracy

must also be motivated by "some racial or perhaps otherwise class-based, invidious discriminatory

animus behind the conspirators' action." Id. at 829.   As previously noted, plaintiffs' complaints fail

to state a claim that defendants conduct was racially motivated.   Although plaintiffs allege

defendants' actions were class-based, plaintiffs "must provide some factual basis supporting a

'meeting of the minds,' such as that 'defendants entered into an agreement, express or tacit, to

achieve the unlawful end.'" Romer v. Morgenthau, 119 F.Supp.2d 346, 363 (S.D.N.Y.

2000)(quoting Warren v. Fischl, 33 F.Supp.2d 171, 177 (E.D.N.Y. 1999)).   Plaintiffs have not

alleged any facts to demonstrate any "meeting of the minds" by the defendants. As previously

discussed, plaintiffs' allegations of a conspiracy are entirely conclusory.   Accordingly, plaintiffs'

complaints fail to state a claim upon which relief may be granted under §1985.

**Section 1986 Claim**

42 U.S.C. Section 1986 provides a cause of action against anyone who "having knowledge that any of the wrongs conspired to be done and mentioned in Section 1985 are about to be committed and having the power to prevent or aid, neglects to do so." Katz v. Morgenthau, 709 F.Supp. 1219, 1236 (S.D.N.Y.), aff 'd in part and rev'd on other grounds, 892 F.2 20 (2d Cir. 1989). Thus plaintiffs Section 1986 claim must fail as a valid "§ 1986 must be predicated upon a valid Section 1985 claim. See Dacey v. Dorsey, 568 F.2d 275, 277 (2d Cir.), cert. denied, 436 U.S. 906 (1978).

**State Law Claims**

Plaintiff's remaining causes of action raise various state law claims against defendants. Title 28 U.S.C. § 1367 (c)(3) "permits a district court in its discretion, to decline to exercise supplemental jurisdiction over state law claims if it has dismissed all federal claims." Tops Markets, Inc. v. Quality Markets, Inc., 142 F.3d 90, 103 (2d Cir. 1998). In exercising its discretion, "a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity...." Carnegie-Mellon University v. Cohill, 484 U.S. 343, 350 (1988). "[W]hen the federal-law claims have dropped out of the lawsuit in its early stages and only state-law claims remain, the federal court should decline the exercise of jurisdiction by dismissing the case without prejudice." Id. While the foregoing does not establish a mandatory rule, it recognizes that in the usual case in which all federal-law claims are eliminated before trial, the balance of factors will point toward declining to exercise jurisdiction over the remaining state-law claims. Id. at 350, n. 7. As plaintiffs' federal claims against all of the defendants should be dismissed, the Court should decline to exercise jurisdiction over the remaining state-law claims.

## CONCLUSION

Defendants' motions to dismiss plaintiffs' complaints for failure to state a claim under Rule 12(b)(6) should be granted. Plaintiffs' complaints should be dismissed in their entirety. I further recommend that the Court should certify pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from an Order adopting this Report and Recommendation would not be taken in good faith, and therefore in forma pauperis status should be denied for purpose of an appeal. See Coppedge v. United States, 369 U.S. 438, 444-45 (1962).

## FILING OF OBJECTIONS TO THIS REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections (and any responses to objections) shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the ten-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physician's Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Services, 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.                              s/ Lois Bloom

                                         _____   _____
                                         Lois Bloom
                                         United States Magistrate Judge

Dated: March 31, 2006
Brooklyn, New York

24